## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MARY E. WARREN**<br>**10706 Meynell Drive**<br>**Cheltenham, MD 20623**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ROBERT F. KENNEDY, JR.,**<br>**SECRETARY, U.S. DEPARTMENT**<br>**OF HEALTH AND HUMAN**<br>**SERVICES**<br><br>**Serve:**<br>**Robert F. Kennedy, Jr., Secretary,**<br>**U.S. Dept. of Health and Human**<br>**Services, 200 Independence Avenue**<br>**S.W., Washington, D.C., 20201**<br><br>**Serve: Pamela Bondi, U.S. Attorney**<br>**General**<br>**950 Pennsylvania Avenue, N.W.**<br>**Washington, D.C.  20530**<br><br>**Serve: Jeanine Ferris Pirro, Acting**<br>**United States Attorney for the District**<br>**of Columbia, 555 4th Street, N.W.**<br>**Washington, D.C. 20530**<br><br>**Defendant.** | **Case No.:** |

## CIVIL COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**COMES NOW** Plaintiff, Mary E. Warren ("Plaintiff," "Complainant," or "Mrs.

Warren"), by counsel, and hereby files this Civil Complaint against **Robert F. Kennedy, Jr.,**

**Secretary, U.S. Dept. of Health and Human Services** (collectively the "Defendant," "Agency,"

"HHS," or "Secretary Kennedy"), and states:

1

**JURISDICTION AND VENUE**

1.      This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq*. ("Title VII"), for unlawful discrimination and employment practices levied against Plaintiff because of her race and gender[1] and for maintaining a hostile working environment, and in retaliation for engaging in EEO protected activity.

2.      Jurisdiction is based upon a Federal Question in that this claim constitutes a case or controversy arising under the Constitution and laws of the United States of America, and original jurisdiction exists pursuant to 28 U.S.C. § 1331.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because the Defendant, HHS, or its Secretary, is an official resident of the District of Columbia, and all of the unlawful transactions, occurrences, and offenses related to this matter were committed in the District of Columbia.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.      On or about October 20, 2023, Plaintiff, a Black female, made contact with the Agency's Equal Employment Opportunity ("EEO") office to complain about ongoing acts of race and gender-based discrimination, retaliation, and a resultant hostile work environment perpetrated by her first and second-level superiors.  On even date and commensurate with that contact, Plaintiff, by counsel, submitted her Informal EEO Discrimination Complaint summarizing the basis for her claims.  *See Informal EEO Complaint dated October 20, 2023 ("Informal Complaint"), ROI 34*.[2]  In summation, Plaintiff initially contended that the Agency failed to follow its internal Anti-Harassment Policy ("AHP") at the time she complained of acts

---

[1] Plaintiff withdraws her EEO claims for gender based discrimination.
[2] The EEO Investigator's Report of Investigation is referred to as the "ROI."

of undermining and harassment perpetrated by RMOs Ann Norris (white woman) ("Ms. Norris") and Alisa Hudgens (white woman) ("Ms. Hudgens").  Moreover, four (4) months had elapsed, and her claims were neither triaged, preliminarily reviewed, investigated nor adjudicated under the AHP.  Plaintiff alleged that the Agency's undue delay or failure to handle her internal harassment complaint violated the AHP and was discriminatory.  Plaintiff also initially raised issues of discrimination, harassment and retaliation: (a) on or about August 18, 2023, Hudgens formally announced an unapproved, unauthorized, and unjustified realignment of Plaintiff's Office in a manner which was intended to-and did-undermine Plaintiff's supervisory and programmatic authority; (b) on or about September 8, 2023, Hudgens impeded approval of Plaintiff's application for Outside Work by lying about receiving it, caused a delay in its ultimate approval; c) on or about September 11, 2023, Hudgens' withdrew payment and distribution of a performance Spot Award to Plaintiff, yet distributed Spot Awards to Plaintiff's eligible peers who were supervisors.

5.     Also, without justification and after Plaintiff filed her Informal Complaint, Hudgens - using then first level supervisor Angela Johnson ("Ms. Johnson") as her *alter ego* - on November 6, 2023, undermined and interfered with Plaintiff's programmatic and supervisory authority by demanding prior review and approval of Plaintiff's communications with senior management. This was done in the form of an email, which was tantamount to a letter of counseling ("LOC").  Then, on November 9, 2023, Ms. Johnson sent Plaintiff restricted email traffic to preclude Plaintiff from forwarding or otherwise using the non-classified email in the performance of her work.

6.     The Agency assigned Plaintiff's matter Case No.: HHS-OS-0046-2024.

3

7.      During the period of October 20, 2023 - December 20, 2023, the Agency's assigned EEO counselor, Ericka Jones (the "EEO Counselor"), executed her statutory counseling functions, including the conduct of interviews with Plaintiff, as well as the responsible management officials (collectively the "RMOs"), namely: Alisa Hudgens (white female), Ann Norris (white female) and Angela Johnson (Black female). *See EEO Counselor's Report, ROI 42 (the "Counselor's Report")*. As reflected in the Counselor's Report, Plaintiff chronicled the actions and omissions she then perceived as acts of racial harassment, discrimination, and acts of retaliation.

8.      On or about November 27, 2023, the Agency issued Plaintiff a "Notice of Right to File Formal Complaint of Discrimination" within 15 days of receipt of the Notice.

9.      On or about December 8, 2023, Plaintiff duly and timely filed her initial Formal Complaint of Discrimination ("Formal Complaint"), incorporating by reference, *inter alia*, the matters and claims raised in her Informal Complaint or during the Counseling period. *ROI, 29-38.*

10.     On December 15, 2023, the Agency acknowledged receipt of Plaintiff's timely filed Formal Complaint. *ROI, 109*.

11.     On or about February 23, 2024, Plaintiff issued a "Second Informal EEO Complaint" alleging additional acts of harassment, discrimination, or retaliation (the "Second Informal Complaint"). *ROI, 123-136. See Exhibit A.* Alternatively, Plaintiff requested that the allegations set forth in the Second Informal Complaint be incorporated as an amendment to the pending Formal Complaint and investigated. The Agency treated the Second Informal Complaint as an amendment to the Formal Complaint and caused the same to be investigated.

4

12.    On or about March 20, 2024, the Agency issued its Letter of Partial Acceptance of

EEO Claims.  ROI, 113-117.    Therein, the Agency formulated the issues asserted in the Formal

Complaint as well as the Second Informal Complaint, as follows:

> **Claim 1: Whether Complainant was subjected to discrimination because of her race (Black), sex (female) and in retaliation for prior EEO activity,[3] when the following incidents occurred**:
>
>> a. On September 11, 2023, Complainant's second-line supervisor[4] told Complainant she would be receiving a "Time Off" award, despite being told she was approved for a monetary award on August 14, 2023.
>>
>> b. On January 29, 2024, Complainant's second-line supervisor issued her a rating of 4.5 on her Calendar Year (CY) 2023 Performance Management Appraisal Program (PMAP) evaluation, which Complainant believes should have been higher.
>>
>> c. As of January 30, 2024, Complainant has not received her CY 2024 PMAP plan.[5]
>
> **Claim 2: Whether Complainant was subjected to harassment (non-sexual)/hostile work environment because of her race (Black), sex (female) and in retaliation for prior EEO activity when, from June 6, 2023, through January 30, 2024, the following incidents occurred:**
>
>> a. Since June 6, 2023, HHS's Office of Human Resources (OHR) Labor and Employee Relations (LER) office has taken no action on her harassment complaint, filed with LER's Anti Harassment Program (AHP).
>>
>> b. On August 18, 2023, Complainant's second-line supervisor announced the realignment of Complainant's office while Complainant was on leave and did not discuss

[3] All Plaintiff's retaliation Claims 1(b)-(c) and Claim 2(b)-(i) are based upon her prior EEO activity commencing on or about June 6, 2023 with the filing of her AHC where Plaintiff asserted harassment based on race.
[4] While the first level superior RMO Johnson actually signed the CY 23 false performance appraisal she did so for herself and/or in collusion with or as an agent of the other RMOs.
[5] Plaintiff withdraws Claims 1c. and 2i.; however, she reserves the right to use these facts for context, background or as evidence under Fed. R. of Evid. 404(b).

the matter prior to the announcement. Complainant stated the realignment was an attempt to remove or change her position.

c. On September 8, 2023, Complainant learned from OHR that the planned realignment was not authorized. Complainant stated [sic] on September 12, 2023, after her inquiry to OHR, her second-line supervisor announced that the realignment would no longer occur. Complainant believes this was due to her inquiry to OHR regarding the realignment.

d. On or about September 11, 2023, Complainant's second-line supervisor denied receiving Complainant's April 20, 2023, HHS-520 form requesting to participate in program related [sic] activities outside of HHS.

e. On September 11, 2023, Complainant's second-line supervisor told Complainant she would be receiving a "Time Off" award, despite being told she was approved for a monetary award on August 14, 2023.

f. On or about November 6, 2023, Complainant was instructed to send all e-mails directly to her supervisor before sending them to anyone else, including senior management.

g. On November 9, 2023, Complainant's first-line supervisor ignored Complainant's request to remove the encryption settings from a non-classified e-mail per HHS policy.

h. On January 29, 2024, Complainant's second-line supervisor issued her a rating of 4.5 on her CY 2023 PMAP evaluation, which Complainant believes should have been higher.

1. As of January 30, 2024, Complainant has not received her CY 2024 PMAP plan.

13.     The Agency accepted Claims la.-lc. and Claims 2b.-2i. and promised to process the same for investigation pursuant to the provisions of Title 29 Code of Federal Regulations (C.F.R.) Part 1614.

14.     The Agency dismissed Claim 2a. on the mistaken grounds that it failed to "state a claim" and the doctrine of "collateral attack."

15.     On March 28, 2024, Plaintiff, by counsel, timely lodged a vehement objection to dismissal of Claim 2a for investigation on various grounds.  *See Exhibit B*.

16.     After the conclusion of the EEO Investigation of the "Accepted Issues" by one Daniel Cabot, Plaintiff was provided with the ROI and given a notice to elect to proceed before an EEOC Administrative Judge.

17.     On September 9, 2024, Plaintiff duly and properly elected to request a hearing before an EEOC Administrative Judge regarding Agency No. HHS-OS-0046-2024 ("HHS-Case No. 0046").  The EEOC assigned its own case number to HHS-Case No. 0046, as follows: EEOC No. 570-2024-01462X ("EEO Case No. 1462X").  Administrative Judge Cynthia G. McKnight was assigned to preside over EEO Case No. 1462X, and the matter is pending as of the filing of this Civil Action.

18.      On or about June 13, 2025, commensurate with the filing of this Civil Action, Plaintiff duly filed and served a Notice of Filing of Civil Action in U.S. District Court (the "Notice") in EEOC Case No. 1462X.  Therein, Plaintiff requested that her Request for Hearing before EEOC Administrative Judge McKnight be withdrawn, on the strength that Plaintiff had filed this civil action in the U.S. District Court for the District of Columbia.

19.    More than 180 days have elapsed since Plaintiff filed her administrative Formal Complaint.

20.    Plaintiff's Formal Complaint (as amended), coupled with all allegations and background facts related thereto, is ripe for adjudication in this federal court in accordance with, *inter alia,* 29 C.F.R. 1614.407.

21.    Plaintiff has duly exhausted her administrative remedies and any other conditions precedent to the prosecution of this Civil Action in the United States District Court.

## PARTIES

22.    Plaintiff has been a federal employee for some thirty-five (35) years.  From December 2019 until the present, she served as the Program Manager, Drug-Free Workplace Program ("DFWP"), GS-301-14, U.S. Department of Health and Human Services, Immediate Office of the Secretary ("OS"), Office of National Security ("ONS").[6]  Plaintiff's duty station is in the Hubert H. Humphrey Building located in Washington, D.C.

23.    Plaintiff maintains a preeminent record as a federal civil servant.  She has received accolades with corresponding performance bonuses and step increases from her federal employers consistently throughout her career.

24.    From February 14, 2025, to the present date, Defendant Robert F. Kennedy, Jr., has served as the Secretary of HHS.   He is sued here exclusively in his official capacity as the

---

[6] In summation, Plaintiff leads and oversees the DFWP for all HHS Operating and Staffing Divisions ("OpDivs/StaffDivs"), ensuring continuity, consistency, and regulatory compliance across the Agency.  She is a subject matter expert, who develops and implements strategic policies, coordinates substance testing, and serves as a liaison to government officials, ensuring alignment with national security protocols. DFWP is authorized by Executive Order 12564 and is aimed at eradicating illegal use, possession, or distribution of controlled substances within and without the government.

head of the Agency.  Secretary Kennedy was preceded by Xavier Becerra, former Secretary, HHS.

25.    At all times relevant to this action, RMO Ms. Hudgens (no prior protected activity) served as Deputy to the Assistant Deputy Secretary for National Security Deputy Director, GS-0132-15.  Hudgens was Plaintiff's second-level superior until October 2023, when Hudgens became Plaintiff's third-level superior.

26.    RMO Ms. Norris (no prior protected activity), served as Plaintiff's first-level superior as the Director of Business Services Division ("BSD"), ONS (GS-03010-15).  She held that position from January 2023 until August 27, 2023, when she was transferred to the Centers for Disease Control.

27.    From June 18, 2023 to November 16, 2024, RMO Angela Johnson (GS-0343-14) served as Plaintiff's first-level superior.  RMO Johnson was the alter ego of RMO Hudgens and other white female superiors.  Immediately after Plaintiff made EEO contact, in late October 2023, RMO Lisa Aguirre ("Ms. Aguirre")  was assigned to supervise RMO Johnson.

28.    In late October 2023, RMO Aguirre (GS-0304-15), a white woman with no prior EEO activity, became Plaintiff's second-level superior.  RMO Aguirre reported directly to Hudgens.

29.    Within the last seven (7) years, upon information and belief, both RMOs Hudgens and Norris have been the subject of *bona fide* racial (Black) harassment or discrimination and EEO retaliation complaints lodged by their Black subordinates.

30.    Upon information and belief, other employees and officials who are known and unknown at this time colluded with the RMOs to violate Plaintiff's Civil Rights.  In that vein,

Hudgens, Norris, Johnson, and/or Aguirre colluded to intentionally discriminate or retaliate against Plaintiff for her EEO activity.

**FACTS COMMON TO ALL COUNTS**

31.     In early January 2023, and continuing, Plaintiff's superiors, RMOs Hudgens and Norris, commenced erecting barriers to Plaintiff's work performance.  Hudgens directed Plaintiff and her team to report to Norris, who had no experience with or oversight regarding the DFWP. Because Norris had no functional knowledge regarding the DFWP, she was compelled to take instructions from Plaintiff, which caused significant tension and hostility in the workplace. Plaintiff was given unreasonable deadlines, excessive work hours and deprived of compensatory time. Plaintiff was excluded from critical meetings and was told to stop assuming roles and responsibilities itemized as material for her annual Performance Management Appraisal Program ("PMAP") review.   Plaintiff's office was severely understaffed, which mandated that Plaintiff perform multiple subordinated functions in addition to her higher-level functions and duties as the Agency's SME regarding the DFWP.  Other similar departments under the control of Norris and Hudgens, headed by non-Black or white supervisors, were, however, properly staffed. Plaintiff complained that RMOs Norris and Hudgens took substantive instructions regarding material issues from a white woman with no knowledge of the DFWP in the face of Plaintiff's expertise and availability.  Norris and Hudgens were interfering with Plaintiff's department so significantly that she feared the DFWP would be deemed non-compliant with Executive Order 12564 and Public Law 100-71.  Plaintiff perceived subjection to ongoing racial harassment and bullying by Norris and Hudgens.  Ergo, on June 6, 2023, Plaintiff filed an internal complaint (the

"AHC") under the Agency's Anti-Harassment Policy ("AHP") reflecting each of the working conditions set forth above. *See Claim 2a.*

32.    According to the AHP:

> HHS promotes Equal Employment Opportunity (EEO), diversity, equity, inclusion, and accessibility to encourage a climate of innovation and success that capitalizes on diversity and professionalism of the HHS workplace. As one of the largest federal agencies, HHS must be a leader in treating employees with dignity and respect. Discriminatory or harassing behavior will not be tolerated at HHS.

*ROI, 472.*

33.    Plaintiff's AHC was ignored by the Agency. In violation of Agency policy, the AHC was not triaged, investigated or adjudicated in any respect. While a brief communication was had by Plaintiff with Donald Ashby, the AHC remained dormant. Yet, the harassment ratcheted upward, which caused Plaintiff to reasonably believe that Ashby informed RMOs Hudgens and Norris of the existence of her AHC. nThe AHP and its resulting "program" were tantamount to a ruse respecting Plaintiff's harassment concerns. Plaintiff believed that the Agency's ignorance of her AHC violated Agency policy and was done because she is a Black woman. The Agency also forfeited an opportunity to correct the respective RMOs' behavior prior to the same cascading.

34.    On June 15, 2023, Plaintiff met with Norris and informed her of Plaintiff's AHC, where Plaintiff asserted harassment based on race. Upon information and belief, Norris told Hudgens of Plaintiff's AHC, as Norris and Hudgens are close and maintain a personal relationship outside of the workplace.

35.    The harassment and discrimination continued with acts of retaliation.

36.    On September 11, 2023, because of her race - or in retaliation - Plaintiff was denied a generous performance-based cash "Spot Award" for her extraordinary work performance.[7]   All Plaintiff's similarly situated eligible peers, including those who had *not* engaged in EEO activity, received generous Spot Awards for their CY 23 work performance. After being promised and entitled to a Spot Award, Plaintiff was given a "Time Off" award.  The Agency had no justification or explanation for its mistreatment of Plaintiff in this respect.  *See Accepted Issues, 1a. and 2d*.

37.    On January 29, 2024, because of her race or gender or in retaliation for her EEO activity, RMO Ms. Johnson, acting for herself or as an agent for RMOs Hudgens, Aguirre or Norris, issued Plaintiff a false, inaccurate or misleading annual CY 23 PMAP evaluation/appraisal.  *See Accepted Issues, 1b. and 1h*.  While Johnson rated Plaintiff 4.5/5.0 scale, Plaintiff's actual work performance should have been rated 5.0.  The accuracy of Plaintiff's work performance "Self-Assessment" was absolutely unrefuted by Johnson and the other RMOs.  RMO Johnson had no justification for her inaccurate, suppressive rating of Plaintiff's performance. According to the Agency's PMAP policy, an employee rated 5.0 is eligible to receive up to "five percent" of their salary in performance bonus *and* a "Quality Step Increase ("QSI").  *ROI, 510.*   As a direct result of the RMOs' joint and several actions, Plaintiff lost the opportunity to receive the maximum performance bonus and a QSI to which she was entitled.

38.    Plaintiff's similarly situated white, non-Black peers received (and were not deprived of) the maximum performance bonus and a QSI.

---

[7] A Spot Award is not to be confused with a "performance award," which is awarded based upon different criteria and is based on the employee's salary on the last day of the rating period (December 31).  *See PMAP policy (ROI, p. 510).*

39.     Plaintiff's similarly situated peers who did *not* engage in EEO activity received (and were not deprived of) the maximum performance bonus and/or a QSI.

40.     As for retaliation, the inaccurate CY 23 Performance Appraisal was issued on January 29, 2024, some fifty (50) days after Plaintiff filed her Formal EEO Complaint (which was on December 8, 2023). However, RMOs Hudgens and Johnson knew that Plaintiff had filed her Formal Complaint because on December 15, 2023, each received a written "Notification[s] of [filing of Plaintiff's] Formal Complaint" from Daniel Levenson, the Agency's EEO Specialist. ROI, 137-138.[8]  The false CY 23 Appraisal was, therefore, issued 45 days after RMOs Hudgens and Johnson knew of Plaintiff's recent EEO activity.

41.     The false, misleading, or inaccurate FY23 PA was harassing. The RMOs were subjecting Plaintiff to an ongoing hostile working environment. Ms. Warren's unit is severely and systematically understaffed with the knowledge, consent, and behest of the RMOs. Ms. Warren was the only SME and Drug Manager for the Agency, which required Ms. Warren to work on a nearly 24/7 basis. The RMOs purposefully implemented schema and strategies designed to create an intolerable workplace for Plaintiff.

42.     On August 18, 2023, RMO Hudgens, for herself and the other RMOs (excluding Aguirre), implemented a harassing and/or retaliatory scheme to undermine Plaintiff's authority, upset her staff, and embarrass her within the Agency. While Plaintiff was on approved leave, RMO Hudgens issued an email to Plaintiff, her staff and others declaring that the DFWP would be "transitioning" to the "Office of the Assistant Secretary ("ASA"), Office of Human Resources ("OHR") starting October 1, 2023." *See Accepted Issues, 2b. and 2c.*  The purported transfer had

---

[8] In her Affidavit, RMO Norris admits that she became aware of Plaintiff's EEO activity in November 2023.

not been discussed with Plaintiff, who heard about the transfer for the very first time after the email was published and she received calls from her subordinates while on vacation.  Plaintiff's unit was incensed, confused, and bewildered.  Questions circulated about managerial supervision/reporting, justification for the move, whether the move was due to disciplinary actions against Plaintiff as the leader of the DFWP, and other *bona fide* concerns.  Plaintiff researched the matter and discovered that RMO Hudgens' announcement of the purported "transitioning" was not approved or endorsed by senior management, was violative of Agency policy and should not have been published.  Plaintiff's unit was the only unit referenced by RMO Hudgens for such transfer.  Additionally, as of the date of this pleading, Plaintiff's unit alignment remains unchanged demonstrating the unfounded or misleading nature of RMO Hudgens' representation.

43.     RMO Hudgens' befuddled effort to purportedly realign DFWP was to get rid of Plaintiff, place Plaintiff in a false light, interfere with her career trajectory, cause undue questions about the efficacy of DFWP, and significant confusion.

44.     The Agency had no justification for RMO Hudgens' behavior.

45.     Plaintiff's similarly situated white, non-Black peers were not subjected to false announcements of program realignment and other related actions in violation of Agency policy and common sense.

46.     RMO Hudgens initially refused to execute Plaintiff's HHS-520 form (the "HHS-520") to permit Plaintiff to engage in Outside Work and then lied about having received the HHS-520. *See Accepted Issues, 2d*.  On April 20, 2023, Plaintiff electronically submitted the

HHS-520 to her then first-line supervisor, RMO Norris.  On April 25, 2023, Norris signed the HHS-520, causing the system to automatically route the HHS-520 to Hudgens on that date.

47.    Hudgens received the HHS-520 on April 25, 2023, per the system.

48.    On or about September 11, 2023, Plaintiff inquired of RMO Hudgens about the status of Hudgens' approval of the HHS-520.  Hudgens claimed she had never received it, which was at war with the information in the system.  On September 11, 2023, Hudgens endorsed the HHS-520, and the same was ultimately approved on November 14, 2023, which was after Plaintiff had filed her EEO Informal Complaint raising the issue.  Hudgens' unreasonable delay in endorsing the HHS-520, however, caused Plaintiff to lose employment income and opportunities from "Outside Work" for teaching and consulting for a private drug testing service.

49.    Before the EEO Investigator, and under oath, RMO Hudgens falsely claimed that she never saw the HHS-520 in question.  RMO Hudgens stated that the HHS-520 would have "gone to [RMOs] Johnson or Aguirre."  RMO Hudgens further stated: "I did not see this form." *ROI, 291*.  That statement is blatantly untrue because Plaintiff has written evidence that: (a) received the HHS-520 on April 25, 2023; (b) RMO Hudgens' in fact (belatedly) signed the HHS-520 on September 11, 2023 *(ROI, 210, 232)*; (c) RMO Johnson never signed the HHS-520 in question; and (d) RMO Aguirre was not in Plaintiff's chain of command at that time and never received the HHS-520.

50.    Plaintiff's similarly situated white peers (or those who did not engage in EEO activity) were not subjected to unnecessary delays in the approval of their HHS-520 forms by RMO Hudgens or the Agency.

51.    On or about November 6, 2023, RMO Johnson immediately commenced retaliating against or harassing Plaintiff. *See Accepted Issue 2f.*  On said date, RMO Johnson issued Plaintiff the LOC in the form of an email, which "instructed" that effective immediately, "ALL MESSAGING to ONS [Office of National Security] senior leadership must be routed to angela.johnson@hhs.gov.  The only exception is a courtesy copy to Lisa Aguirre with the Friday DFWP weekly reports."  RMO Johnson, for herself and the other RMOs wrote:

> Please be advised that BSD [Business Services Division] leadership will determine and communique [sic] to ONS [Office of National Security] leadership all urgent DFWP matters and drug testing updates (i.e., pre-employment/political appointee, reasonable suspension, and negative re-tests). Failure to comply will result in disciplinary action. Your cooperation is appreciated.

> Note - Forward all draft emails for Tim [Latta], Alisa[Hudgens], and Lisa [Aguirre] to Angela.Johnson@hhs.gov.

52.    RMO Johnson's imposition of this undue burden grossly interfered with Plaintiff's autonomy and her ability to execute her job functions. Plaintiff is the Agency's Subject Matter Expert ("SME") and program manager respecting the DFWP.[9]  Plaintiff, according to her Position Description, is "accountable to a position that is two (2) reporting levels below the first SES level in a direct supervisory chain of command."  RMO Johnson was three (3) levels below SES Tim Latta; and, not two levels.  Consequently, RMO Johnson lacked the authority to make this unreasonable, threatening demand; therefore, the LOC was unfounded, harassing and/or retaliatory.

---

[9] Plaintiff's Position Description, classified date 12/3/2028, reads, in relevant part: "[t]he incumbent is considered an expert at applying analytical and evaluative techniques to the development, implementation, and oversight of the drug program." *Id., p. 2.*  Furthermore, the PD states that the incumbent "reports to the Personnel Security Division Director [Office of Security and Strategic Information]."  *Id., p. 3.*

53.     RMO Johnson issued the LOC imposing an unreasonable requirement for the very first time sixteen (16) days after Plaintiff filed her Informal EEO Complaint on October 20, 2023.

54.     Indeed, on November 3, 2023, Plaintiff had her initial interview with the EEO counselor.  Therefore, the LOC was issued exactly three (3) days after Plaintiff participated in the EEO counselor's interview regarding her Informal Complaint.  Upon information and belief, the RMOs were aware of Plaintiff's protected EEO activities on October 20, 2023, November 3, 2023, and November 6, 2023 (Plaintiff's designation of legal counsel).

55.     There is another act of harassment and/or retaliation committed at the hands of RMO Johnson and others.  *See Accepted Issue 2(g)*.  On November 9, 2023, some twenty (20) days after Plaintiff filed her Informal EEO Complaint, and six (6) days after Plaintiff was interviewed by the EEO counselor (11/3/2023), RMO Johnson ignored Plaintiff's request to remove encryption or restriction settings from a non-classified email.  RMO Johnson's response is pretextural.

56.     RMO Johnson claimed to the EEO counselor, after being questioned about the issue, that she was: "unaware that encrypted emails would prevent the receiver from printing them for their documentation/records at their discretion."  In her Affidavit submitted to the EEO Investigator dated May 29, 2024,  RMO Johnson simply claimed the "email was encrypted inadvertently." *ROI, 352*.

57.     RMO Johnson's response is untrue because an email cannot be inadvertently encrypted or restricted.  The issuance of a restricted email requires at least a 3-step process with verification.  Restriction of the email in question required that RMO Johnson:  (1) access

"options" on her GFE - computer; (2) select "encrypt;" (3) select "permission" on this item will appear, then click on "restrict;" and (4) prior to sending the email, traverse the prompt which ensured that she wanted to implement a "restriction."

58.     The action is further pretextual because when Plaintiff brought the restriction to RMO Johnson's attention, RMO Johnson demurred and did not release the restriction from the email.

59.     Plaintiff has engaged in the following EEO protected activity, relevant to this action such as when she filed her AHC on June 6, 2023.  Plaintiff engaged in further EEO activity in the following particulars and otherwise:

> a.      EEO Contact made on October 20, 2023, and by counsel, and filed the written Informal EEO Complaint;
>
> b.      Plaintiff participated in the initial interview with the EEO counselor on or about  November 3, 2023;
>
> c.      On November 6, 2023, Plaintiff designated Richard Carnell Baker, Esq., as her legal counsel;
>
> d.      On December 8, 2023, Plaintiff filed her Formal Complaint of Discrimination;
>
> e.      On February 23, 2024, Plaintiff filed a new Informal Complaint by and through her Attorney;
>
> f.      On March 28, 2024, Plaintiff's attorney filed an Objection to the Partial Acceptance Letter he received on March 21, 2024.

60.     Plaintiff has engaged in EEO activity in various and sundry particulars as stated herein or in attachments to this Civil Complaint and suffered material adverse action and injury at the hands of the RMOs and the Agency as a result thereof.

61.     The Agency is liable under Title VII for the aforestated harassment and discrimination because it knew, or should have known, of the racial discrimination or harassment; however, failed to take prompt and effective remedial action.  Instead, it did just the opposite.  It condoned, ratified, and otherwise allowed the racially harassing and discriminatory behavior to continue in violation of Title VII, including the Agency's own anti-discrimination and anti-harassment, and other relevant policies and regulations.

62.     As a result of Plaintiff's good faith Formal Complaint and opposition to racial harassment, the Agency, by and through its senior managers and executives and others colluding with them, have engaged in other acts and/or omissions constituting unlawful retaliation in violation of Title VII, including the Agency's anti-retaliation regulations.

63.     Plaintiff's white peers, who were similarly situated, were treated differently from Plaintiff - they were not treated disparately or harassed by Defendant or its agents, supervisors, managers, executives,  employees, and other persons known and unknown.

64.     Plaintiff's peers, who were similarly situated, but had not engaged in EEO activity, were treated differently from Plaintiff - they were not retaliated against by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

## COUNT I (VIOLATION OF TITLE VII - HOSTILE WORK ENVIRONMENT)

65.    Plaintiff incorporates every allegation set forth in paragraph nos. 1-64.

66.    Plaintiff was harassed because of her race by Defendant through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown and the cumulative effect of such actions within context.

67.    The discriminatory statements, threats, and other conduct alleged herein were unwelcome, sufficiently severe or pervasive to detrimentally affect Plaintiff and were perceived or viewed by Plaintiff as subjectively hostile and abusive and would be viewed as such by a reasonable person.

68.    Plaintiff complained numerous times to Defendant's supervisors and managers about racial discrimination, retaliation or harassment and requested that corrective action be taken.

69.    Defendant had actual or constructive knowledge of the ongoing discrimination, retaliation or harassment to which Plaintiff was being subjected.

70.    However, Defendant's duly authorized supervisors, managers, and executives failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

## COUNT II (VIOLATION OF TITLE VII - RETALIATION)

71.    Plaintiff incorporates every allegation set forth in paragraph nos. 1-70.

72.    Plaintiff engaged in protected activity when she filed her Formal Complaints, and she engaged in other EEO protected activity or opposed unlawful harassment or discrimination in various and sundry ways thereafter and as stated herein.

73. As retaliation for Plaintiff filing her Formal Complaint (as amended) or engaging in EEO protected activity or opposing unlawful discrimination and harassment, Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, subjected Plaintiff to various acts of retaliation as alleged herein.

74. There is a causal connection between Plaintiff's protected activity and the material adverse actions taken against Plaintiff by Defendant, through its duly authorized agents, supervisors, managers, executives, and employees, and other persons known and unknown. Indeed, the myriad acts of retaliation were perpetrated against Plaintiff on the heels of Plaintiff's participation in EEO activity, as alleged herein.

75. The material adverse actions taken against Plaintiff by Defendant's agents, supervisors, managers, and executives (and the cumulative effect of such actions within context) were knowingly executed by Defendant and would dissuade a reasonable employee from making complaints of discrimination or participating in EEO protected activity.

76. Defendant, through its duly authorized agents, supervisors, managers, executives, employees and other persons known and unknown, purposefully retaliated against Plaintiff for engaging in EEO protected activity in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

**COUNT III (VIOLATION OF TITLE VII - RACIAL DISCRIMINATION)**

77. Plaintiff incorporates every allegation set forth in paragraph nos. 1-76.

78. Plaintiff was discriminated against because of her race (Black).

79. Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, acted intentionally, willfully, or in reckless

disregard for Plaintiff's Civil Rights under Title VII by subjecting her to unlawful racial discrimination.

80.    Plaintiff's peers, who were similarly situated, were treated differently from Plaintiff in that they were not discriminated against by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

81.    The discriminatory actions and omissions committed by Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, were materially adverse and changed the terms, conditions, privileges, or immunities of his employment.

82.    The stated reasons for misconduct of Defendant, by and through its duly authorized agents, supervisors, managers, executives, and employees, were not the true reasons for the actions or omissions at issue, but were instead a mere pretext to hide the Defendant's discriminatory animus.

### DAMAGES

Because of statutorily impermissible or willful, if not malicious, acts of the Defendant and its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e, *et seq*. ("Title VII").  As a consequence of the unlawful and outrageous actions of Defendant through its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental

anguish.   Plaintiff seeks recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e, *et seq*.

### PRAYER FOR RELIEF

Based upon all the allegations stated herein, Plaintiff, MARY E. WARREN, prays for: (a) back pay and front pay for the loss of income and benefits as a result of the discrimination, racial harassment and retaliation stated herein orchestrated by Defendant through its duly authorized agents, supervisors, managers, executives and employees; (b) compensatory damages in the maximum amount permitted under law, Three Hundred Thousand Dollars ($300,000.00); (c) an award of her attorney's fees, costs and expenses associated with this matter, plus interest; and (d) such other and further relief as this Court deems meet.

### A JURY TRIAL IS HEREBY DEMANDED

**MARY E. WARREN**
**By Counsel**


**BAKER SIMMONS**
**Attorneys at Law**
**800 Connecticut Avenue, N.W., Suite 300**
**Washington, D.C. 20006**
**Telephone: 202.775.0050  Facsimile: 202.204.5784**
**Email: richardcbaker@aol.com; baker@bakersimmonslaw.com**

By: */S/RICHARD CARNELL BAKER*
Richard Carnell Baker, D.C. Bar 451190 and VA Bar No.: 28854
Amana Thompson Simmons, Maryland Bar and VA Bar No.:41901
Counsel for Mary E. Warren

**Dated: June 13, 2025**